# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 2504 | **DATE** | 6/4/2013 |
| **CASE TITLE** | Purzel Video GMBH vs. Does 1-161 | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court severs Doe 1 from Does 2-161, dismisses Does 2-161 from this suit without prejudice to plaintiff suing them individually and denies without prejudice plaintiff's motion to take early discovery [14].

■[ For further details see text below.]  Docketing to mail notices.

# STATEMENT

**Joinder**

Plaintiff alleges that defendant Does 1-161 infringed its copyright in a pornographic movie by copying and distributing it on the internet in a "swarm" using BitTorrent software. (Compl. ¶¶ 4-8.) Though plaintiff alleges that defendants participated in the swarm on different days and at different times between February 1-27, 2013 (*id.*, Ex. A), it contends that they are all properly joined in this suit because a swarm, even one of significant duration, constitutes one transaction within the meaning of Rule 20. (*Id.* ¶ 9); *see* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action.").

However, as the court in *Malibu Media v. Reynolds* explained:

Despite its cooperative design, the BitTorrent protocol's architecture alone does not compel the conclusion that anonymous defendants who download copies of the same file from the same swarm are engaged in a common transaction or series of transactions for the purposes of Rule 20(a)(2). Where a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data. Furthermore, it is impossible for defendants who are not in a swarm coextensively to exchange any pieces of a file.

No. 12 C 6672, 2013 WL 870618, at *11 (N.D. Ill. Mar. 7, 2013); *see Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012) (holding that participation in the same swarm does not satisfy Rule 20(a) because a swarm "can last for many months[,] . . . . the initial participants may never overlap with later participants [, and] because pieces and copies of the protected work many be coming from various sources within

the swarm, individual users might never use the same sources"); *In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-2995 (DRH) (GRB), 12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012) (stating that, given "the dates of downloading provided in the complaints – which are often weeks or months apart[,] . . . . even [if] the John Does are the actual infringers, the assertion that [they] were acting in concert rests upon a thin reed"); *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502 (N.D. Cal. 2011) ("Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence.").

Even if the requirements for joinder were satisfied, the Court would still sever Does 2-161 from this suit pursuant to Rule 21. *Id.* ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) (stating that district courts have "broad discretion" to determine whether to sever). As the Court in *Pacific Century International, Ltd v. Does 1-101*, aptly noted:

> The manageability difficulties, procedural inefficiencies, and likelihood that Defendants will assert myriad factual and legal defenses compel it to sever Does 2-101 from this case. An internetbased copyright infringement case with at least 101 defendants would prove a logistical nightmare. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial of 101 such claims would be inefficient, chaotic, and expensive. Each Defendant's varying defenses would require the court to cope with separate discovery disputes and dispositive motions, and to hold separate trials, each based on different evidence. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross.

No. C-11-02533 (DMR), 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (citations omitted); *see Malibu Media*, 2103 WL 870618 at *15 ("[T]he individualized issues related to each Doe defendant's defense would wash away any judicial economy that may have been achieved through a plaintiff's mass-litigation strategy."); *Digital Sins, Inc. v. John Does 1-245*, No. 11 Civ. 8170 (CM), 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (stating that "[t]rying 245 separate cases in which each of 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable" and "[t]he only economy that litigating these cases as a single action would achieve is [the] economy to plaintiff . . . of not having to pay a separate filing fee for each action brought").

In short, the Court finds that plaintiff has not satisfied the Rule 20(a) conditions for joinder. Accordingly, the Court severs Doe 1 from the remaining defendants and dismisses Does 2-161 from this suit without prejudice to plaintiff suing them individually.

**Motion for Early Discovery**

Plaintiff asks the Court for leave to issue a subpoena to defendant Doe's internet service provider ("ISP") before the Federal Rule of Civil Procedure 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."). Rule 26 does not set forth a standard for doing so, but courts in this circuit have generally granted such motions on a showing of "good cause." *See, e.g., Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012); *AF Holdings, LLC v. Doe*, No. 12-1398, 2012 WL 5928532,

| STATEMENT |
|---|

at *1 (C.D. Ill. Nov. 26, 2012); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386 (E.D. Wis. 2009). Good cause exists when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Hard Drive Prods., Inc.*, 283 F.R.D. at 410 (quotation omitted). "In deciding a motion for expedited discovery, the Court evaluates the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.* (quotation omitted).

As many courts and commentators have noted, a showing of good cause is particularly important when, as in this case, plaintiff sues an internet user for illegally downloading copyrighted pornography for several reasons. First, the increasing ubiquity of wireless networks undermines the copyright holder's assumption that the ISP subscriber is the copyright infringer. *See In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-2995 (DRH) (GRB), 12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) (stating that, because of the increasing use of wireless routers, by which one IP address can support multiple devices, the downloader could be the subscriber's family member, friend, visitor, neighbor or even a passerby); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. Jan. 30, 2012) (noting the risk that "many of the names and addresses produced [by the ISP] . . . will not in fact be those of the [infringers]," given the estimate by "[p]laintiff's counsel . . . that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material"); *VPR Int'l v. Does 1-1017*, No. 2011 WL 8179128, at *2 (C.D. Ill. Apr. 29, 2011) ("The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). Second, the embarrassment of being publicly accused of downloading pornography, illegally no less, is a strong incentive for even those wrongly accused to settle such a suit. *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at *7 (N.D. Ill. Mar. 7, 2013) ("[T]his Court is not the first to recognize that claims against mass defendants and motions to discover defendants' identities may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense."); *Hard Drive Prods. v. Does 1-48*, No. 11 C 9062, 2012 WL 2196038, at *5 (N.D. Ill. June 14, 2012) (noting that adult film producers "sue[] a mass of anonymous defendants, gain[] leave to take expedited discovery to obtain the identities of the IP subscribers, then settle[] with numerous defendants who are motivated to avoid being publicly connected to pornographic movies, although the plaintiff actually harbors little interest in going through with [the] litigati[on]"). Third, the rise of so-called "copyright trolls" – plaintiffs who file multitudes of copyright suits solely to extort quick settlements – requires courts to ensure that the litigation process and their scarce resources are not being abused. *See generally*, Sean D. Karunaratne, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283 (Nov. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79 (Winter 2012).

Plaintiff contends that there is good cause for issuing an early subpoena to Doe's ISP because that is the only way to identify Doe. Plaintiff bases this assertion on the Declaration of Matthias Schroeder Padewet, Vice President of Copyright Defenders, Inc., "a provider of online anti-piracy services." (*See* Mem. Supp. Mot. Leave Take Discovery Prior Rule 26(f) Conference, Ex. 1, Padewet Decl. ¶¶ 1-2.) Padewet states that "ISPs keep track of the IP addresses assigned to its [sic] subscribers at any given moment," *i.e.*, user logs, which "provide the most accurate means to connect an infringer's identity to its infringing activity," but also states that "the IP address does not enable [plaintiff] to ascertain with certainty" either the location of the computer or "the infringer's identity." (*Id.* ¶¶ 30, 32.) Moreover, Padewet asserts that ISPs retain user logs "for a very limited amount of time" (*id.* ¶ 29), but he does not explain how he has knowledge of the record-keeping practices of ISPs. Absent that information and an explanation of how often, in Padewet or plaintiff's experience, a subscriber identified by an ISP is not an infringer, plaintiff has not shown good cause for early discovery.